JOE DUKES, alias MICKENS, FRANCIS KAREL, Sheriff of Orange County, MURROW & MURRAY, a firm composed of J. B. MURROW and J. J. MURRAY, and JONES & JONES, a firm composed of J. C. JONES *and* J. H. JONES, *Appellants,* v. CATHERINE WALTON and CATHERINE WALTON as Administratrix of MARY DUPREE, deceased, *Appellee.*

En Banc.

Opinion filed July 16, 1930.

Petition for rehearing denied July 30, 1930.

*Jones & Jones, J. B. Murrow* and *J. J. Murray,* for Appellants;

*Dickinson & Dickinson,* for Appellee.

ELLIS, J.—This is a suit to impress a trust upon certain personal property held by the sheriff of Orange County of which he took possession from Joe Dukes who purchased the property with money which it is alleged he obtained by a criminal fraud, from the complainants, Catherine Walton and Mary Dupree, widows. Upon a warrant issued against him for the crime the sheriff took possession of the personal property when Dukes was arrested and confined in jail. A restraining order was obtained against the sheriff and Joe Dukes restraining them from disposing of the property until the further order of the court.

A decree *pro confesso* was entered against the sheriff. On July 5, 1926, about a month afterwards, Joe Dukes demurred to the bill and the demurrer was overruled.

Then J. J. Murray and J. B. Murrow, as Murrow and Murray, attorneys at law, J. C. Jones and J. H. Jones, a law firm practicing as Jones and Jones, caused to be filed a petition for leave to intervene. The petition was granted. They interposed an answer to the bill disclaiming knowledge of the circumstances constituting Dukes' alleged fraud perpetrated upon the complainants, admitted that the sheriff had in his possession the personal property belonging to Dukes consisting of a Buick automobile, a diamond ring, a diamond stick pin, a diamond watch charm, a leather hand bag and a wardrobe trunk and contents, but denied that the diamond ring, stick pin and watch charm were purchased by Dukes with the money obtained from the women and averred that those articles belonged to him and were

acquired by him before he obtained the money from the complainants. They also denied that the sum of one hundred six dollars held by the sheriff as the property of Dukes was the property of the complainants. The answer then averred that the intervening defendants were engaged by Dukes to represent him in the trial of the criminal charges against him and in payment for their services assigned to them the property held by the sheriff consisting of the automobile, the diamond jewelry, the hand bag, wardrobe trunk and money; that Dukes gave them a written order upon the sheriff for the delivery to them of the property.

Thereafter a decree *pro confesso* was entered against Dukes for failure to answer the bill of complaint. Sometime late in November, 1926, the Court, upon motion of the intervening defendants, extended the time for taking testimony thirty days. On December 22, 1926, the intervening defendants applied for a further extension of time for taking testimony on the ground that Dukes, whose testimony they desired to procure, had been committed to the State Prison and had been removed to an obscure point in Taylor County; that defendants had not obtained that information until late; that they were advised of the fact by telegram from "Raiford," which is the place where the penitentiary is located. This application was denied.

The record then discloses that the special examiner's report of the testimony was made on January 5, 1927, and consists of about forty pages of typewritten matter. The intervening defendants then applied to the court for leave to take the testimony of Dukes for the purpose of showing that the "articles were not purchased with the money alleged to have been obtained from the complainants and to identify said articles now in the hands of the sheriff as articles sworn to by other witnesses as having been sold to Joe Dukes long prior to the time of meeting the complainants." The petition alleges that defendants "expect to, and will

prove by said Joe Dukes, that the articles in the hands of the sheriff are the identical articles sworn to by the witness, S. P. Pinkoson, to have been purchased and owned by Joe Dukes long prior to the meeting of the complainants by the defendant, Joe Dukes, and that they are the same and identical articles purchased by him, Joe Dukes, and taken from him by the officers and now held by the sheriff of Orange County.''

The application submitted contained many other averments and arguments why it should be granted, but it contains no averment as to how the defendants knew that Dukes would testify as they averred nor by what means they had so informed themselves that he would testify as they averred. Whitman v. State, 97 Fla. 988, 122 So. R. 567.

From anything to the contrary appearing in the petition, the statement that Dukes would testify as they averred was a mere deduction from the testimony of Pinkoson that the articles to which he referred as being in the possession of Dukes were the same articles in the possession of the sheriff over which this controversy arose.

Following the rule of law in such cases, the discretion of the chancellor should not be disturbed in this matter because it is not plain that an injustice or injury has been done the defendants. See Ahren v. Willis, 6 Fla. 359; Baldwin v. Lafayette Land Company, 62 Fla. 129, 56 So. R. 943; Bolles v. Carson, 73 Fla. 504, 74 So. R. 509; Supreme Lodge K. of P. v. Lipscomb, 50 Fla. 406, 39 So. R. 637; Wilson v. Johnson, 51 Fla. 370, 41 So. R. 395; Reynolds v. Smith, 49 Fla. 217, 38 So. R. 903.

There was no identification by the witness Pinkoson of the articles held by the sheriff except in most general terms; the proffered testimony of Dukes was merely cumulative. It cannot be said that defendants, four of whom were interested, showed very much diligence in procuring the testimony of Dukes after the granting of the first extension

of time and certainly no diligence when it is considered that five months elapsed from the date of the filing of their answer until the date the taking of testimony was closed, and at best the proffered testimony of Dukes was merely cumulative.

The application being denied and a petition for a rehearing overruled and a second petition denied the court entered its final decree in favor of the complainants. The intervening defendants appealed.

Our examination of the record reveals to us no error committed by the chancellor. The decree ordered the intervening defendants to pay the sum of $75 to complainants "as additional costs and expenses herein caused to be incurred by them."

A month later a petition for a rehearing was interposed by the defendants and denied. The appeal is from the final decree adjudging the equities between the parties.

Some little bitterness, not to say acrimony, is evident in the briefs as existing between counsel in the case which we deplore and find no justification for. All the attorneys engaged are known to the members of this Court as of good standing at the bar and capable and efficient counsellors. The intervening defendants were entirely within their rights in seeking the possession of property which they deemed to be theirs by reason of the service rendered to their client and for which he attempted to requite them by paying over the personal property which they deemed to be his. That they were not successful in establishing their claim is no ground for criticism of their defense.

We are unable to say from an examination of the evidence that the chancellor erred in any material matter except that of requiring the payment by the defendants of seventy-five dollars which the decree states is additional costs incurred by reason of the intervention by defendants.

There seems to be no evidence of such additional costs amounting to that sum and of course it cannot be presumed to be an arbitrary sum imposed by way of penalty upon the defendants.

Whatever the costs amounted to the defendants are required to pay and it is for the clerk in due course to make out a bill therefor, that is to tax the costs in the case according to the law. Nor do we think that the chancellor by his rulings committed any error prejudicial to the defendants' rights.

The decree is modified so as to eliminate the item of seventy-five dollars as additional costs. In all other respects the decree is affirmed.

TERRELL, C. J., AND WHITFIELD, STRUM AND BUFORD, J. J. concur.

BROWN, J., dissents in part.

BROWN, J. (Dissenting in part): This being a chancery case, I am inclined to the view that on the showing made the chancellor should have granted the application for further time in which to take the testimony of Joe Dukes. The application stated positively that Dukes would testify to certain material facts. Even in actions at law, I believe a motion for continuance on the ground of the absence of a material witness, which motion is apparently made in good faith and which is otherwise sufficient, should not be denied merely because the motion does not set forth the means by which the movant knew or was informed that the absent witness would testify as alleged. If the application is otherwise good, and alleges positively that such absent witness, if permitted to testify, would testify to certain material facts, this should, in my opinion, be *prima facie* sufficient. In other words, I think the rule heretofore pre-

vailing should be modified in this respect. It might in many cases prove embarrassing to a party to have to show how he obtained such information, although it might have come to him in a perfectly legitimate way, so far as he was concerned. In the interest of justice, no unnecessary obstacle should be put in the way of getting all the material evidence before the court.